UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIPPECANOE ASSOCIATES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:07-cv-1660-SEB-JMS |
| vs. ) | |
| ) | |
| OFFICEMAX NORTH AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

This cause is before the Court on the Motion for Reconsideration [Docket No. 78] filed on July 10, 2009 by Defendant OfficeMax North America, Inc. f/k/a OfficeMax, Inc. ("OfficeMax").  Pursuant to Federal Rule of Civil Procedure 54(b), OfficeMax filed a Motion for Reconsideration after the Court, in its Order Addressing Motions for Summary Judgment [Docket No. 68], issued on March 20, 2009, granted partial summary judgment in favor of Plaintiff Tippecanoe Associates, LLC ("Tippecanoe").  For the reasons detailed below, Defendant's Motion for Reconsideration is DENIED.

### *Background*

This case originally arose out of a Lease between Tippecanoe, as landlord, and OfficeMax, as tenant, for 23,500 square feet of commercial space in Tippecanoe's shopping center in Lafayette, Indiana.  The lease contained a "Cotenancy Provision," which provided, in relevant part:

> Landlord acknowledges and agrees that it is a material inducement for Tenant to enter into this lease that <u>a minimum of three (3) single user retail tenants, each occupying in excess of 15,000 square feet of floor area and occupying in the aggregate of a minimum of 100,000 square feet to be open, occupied, and operating for retail purposes</u> at all times during the term of this lease (the "<u>Cotenancy Condition</u>"). Accordingly, Tenant shall have the right to abate minimum rent hereunder and/or to terminate this lease, as set forth below, if the Cotenancy Condition is violated for any reason whatsoever (the foregoing event is referred to as the "<u>Cotenancy Event</u>") . . . .
>
> Upon the occurrence of a Cotenancy Event, and provided Tenant is operating its business at the Demised Premises, minimum rent shall abate, and Tenant shall pay rent in an amount equal to the lesser of one percent (1%) of gross sales, or the minimum rent, until Landlord has caused to the Cotenancy Condition to be satisfied.
>
> <u>If, within one (1) year after the occurrence of a Cotenancy Event the Cotenancy Condition is not satisfied Tenant shall have the right to terminate this lease</u> upon thirty (30) days written notice to Landlord.

Lease at 27 (emphasis added).

Further factual background is set forth in the Court's prior Order and shall not be repeated here.

### *Legal Analysis*

Federal Rule of Civil Procedure 54(b), which governs the present Motion for Reconsideration, provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). Consistent with this rule, a party may file a motion for reconsideration, which serves a

limited purpose: "to correct manifest errors of law or fact or to present newly discovered evidence." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted).

With its motion, OfficeMax contends that summary judgment was inappropriate because there exist disputes of material fact related to the Cotenancy Provision that must be resolved by a jury. Specifically, OfficeMax contends that the Court erred in finding: (1) that Party at Trav's was a single user retail tenant; (2) that Party at Trav's occupied in excess of 15,000 square feet at the shopping center; and (3) that Party at Trav's satisfied the "appealing" provision of the Lease between the parties.

### *I. Whether Party at Trav's was a Single User Retail Tenant*

OfficeMax first contends that Party at Trav's was not a "single" retail store at all, but rather consisted of two distinct businesses operating on a single piece of property: one was Travis Chrisman's fireworks store, which had previously occupied a smaller part of the shopping center, while a franchise of Halloween Express owned and operated by Linda Love was the other. According to OfficeMax, because Travis Chrisman had no ownership of the Halloween Express Franchise, the Court erred in finding that the space was filled by a single user retail tenant. In support of its theory, OfficeMax points to the following testimony of Keith Love, partner of Linda Love and Travis Chrisman:

> Q: Does Travis Chrisman receive any compensation relating to the Halloween sales that take place here in Lafayette?
>
> A: No.

Dep. of Keith Love at 78. OfficeMax focuses on Travis Chrisman's "compensation" because the Court's summary judgment Order concluded the following: "When Mr. Chrisman, Linda Love, and Keith Love entered into an agreement to share the duties, *and the profits*, arising from the business, they formed a partnership to operate Party at Trav's." Order [Docket No. 68], at 9 (emphasis added).

OfficeMax's argument here is unavailing for two reasons. First, the testimony of Keith Love is not convincing evidence that Chrisman and the Loves did not, in fact, share profits as to the entire business, especially in light of copious evidence in the record that profits were, indeed, shared.[1] The record clearly demonstrates that Party at Trav's maintained a single set of financial and sales records, recorded sales of all types on the same registers, and shared profits resulting from those sales. E.g., Aff. of Linda Love ¶¶ 4-8; Dep. of Keith Love at 34-35.

Moreover, the Court's conclusion that Party at Trav's constituted a single business was based on numerous considerations, not simply their profit sharing:

> Keith Love specifically denied that the Halloween Express franchise was a separate and distinct business: "We are a year-round store, Halloween Express is a part of the product offerings that we have." Dep. of Keith Love at 136-37.

---

[1] At most, this testimony refers only to "compensation." Because it does not specifically relate to profits, it does not contradict the evidence before the Court clearly demonstrating that profits from sales made at the business were shared.

> Party at Trav's utilized a single group of employees; a single, integrated set of cash registers for all sales (different goods are sold in one transaction with one receipt); and one set of combined financial records. The fact that the types of goods were physically separated is of no moment because within a single retail operation that is a common business practice and essentially irrelevant here.

Order [Docket No. 68] at 10.

OfficeMax has failed to proffer convincing evidence showing that the parties did not share profits for the business they operated jointly. Because Travis Chrisman and the Loves jointly operated all components of their shopping center business, the single user retail tenant provision of the Lease was satisfied.

## II. *Whether Party at Trav's Occupied at Least 15,000 Square Feet*

OfficeMax also contends that the Court should reconsider its finding that Party at Trav's was open, occupying, and operating for retail purposes in excess of 15,000 square feet. In support of this contention, OfficeMax has submitted the affidavit of Jack Barson, who visited the business in November 2007 and avers that "Party at Trav's was using and occupying far less than half of the [30,000 square feet] of interior space." Aff. of Barson ¶ 15. Mr. Barson's averment reflects his conclusion that some of the space was being used to "warehouse" goods rather than for direct sales purposes. However, in our previous Order we concluded:

> The contract . . . requires that the 15,000 square feet be open "for retail purposes." Asserting that some of the space was used for warehousing, not sales, OfficeMax argues that this is another reason Party at Trav's did not qualify as a "single user retail tenant." However, as used in this part of the lease, "retail" is an adjective. Webster's Dictionary defines "retail" in this

5

> form as "of, relating to, or engaged in the sale of commodities at retail." Webster's Third New International Dictionary 1938 (2002).
>
> All warehousing activities undertaken at Party at Trav's were directly related to the sales of products in that same store. The warehousing was carried out "for retail purposes" and was, in fact, an essential part of Party at Trav's sales operation.

Order [Docket No. 68], at 12.

Moreover, the evidence adduced on summary judgment clearly indicated that open spaces in the store were provided for aesthetic purposes and as an allowance for cart traffic, and that according to Mr. Love empty shelving was a minor, temporary condition usually resulting from the transfer of goods from one area of the store to another. Dep. of Keith Love at 156, 169. Further, the evidence demonstrated that the managers of Party at Trav's filled the floor space with surplus goods so as to instill confidence in customers as to the quality of the goods available. See id. at 108.

Once again, the evidence adduced by OfficeMax, namely, the averments of Mr. Barson - who did not observe the premises on a regular basis and never actually entered the store - is insufficient to demonstrate any error in the Court's conclusion that Party at Trav's was occupying in excess of 15,000 square feet of retail space. Therefore, the Motion for Reconsideration must be denied.

### III. *Whether Party at Trav's Was "Appealing"*

OfficeMax also contends that Tippecanoe breached the terms of the Lease because Party at Trav's was not "appealing." Pursuant to the Lease, "businesses in the Shopping

Center shall be attractive, both in physical characteristics and in appeal, to customers and retail trade." Lease at ¶ 21.  According to OfficeMax, a question of material fact remains as to whether Party at Trav's met this standard.

Specifically, OfficeMax requests that the Court reconsider is conclusion that Party at Trav's profitability, along with other considerations, demonstrated that the store was appealing to customers.  The evidence before the Court, however, at the time the prior Order was issued and at present, clearly indicates that Party at Trav's competed with other major retailers by offering top-quality merchandise, advertised through both television and radio, and turned a significant profit.  Dep. of Keith Love (Ex. P) at 128-29, 236-237.  Together, this evidence satisfied the above provision, and OfficeMax has offered no new evidence indicating that Party at Trav's was not appealing in the sense contemplated by the Lease.  Thus, the Motion for Reconsideration must be denied on this basis as well.

## IV. Conclusion

Having carefully considered the parties' arguments, we conclude that the Court's Order Addressing Motions for Summary Judgment included no manifest errors of fact or law.  Accordingly, Defendant's Motion for Reconsideration is <u>DENIED</u>.

IT IS SO ORDERED.

Date: _____01/25/2010_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

7

Copies to:

Anthony E. Dowell
DOWELL BAKER P.C.
aedowell@dowellbaker.com

Karen Lynn Lobring
LOBRING & ASSOCIATES LLP
lobring@msn.com

Erik F. Stidham
HOLLAND & HART LLP
efstidham@hollandhart.com